UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| ROBERT MCBRIDE, an individual, | No. 2:23-cv-02242 WBS DB |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| PHH MORTGAGE CORPORATION, a limited liability company, and DOES 1 through 20, inclusive, | |
| Defendants. | |

----oo0oo----

Plaintiff Robert McBride ("McBride" or "plaintiff") filed this lawsuit under the Homeowner Bill of Rights, Cal. Civ. Code §§ 2923.6-.7, and the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, alleging that defendant PHH Mortgage Corporation ("defendant" or "PHH") attempted an illegal foreclosure of his residence.  (Docket No. 1.)  Defendant now moves for summary judgment on all claims.  (Docket No. 23.)

1

I. <u>Background</u>

Pursuant to a mortgage now serviced by PHH, McBride purchased the single-family home located at 3650 Coyote Road, West Sacramento, CA 95691 ("the property") in Yolo County as a personal residence for himself and his spouse in 2006. (Statement of Undisputed Facts ¶¶ 1-2 (Docket No. 25-4).)

After the COVID-19 pandemic began, plaintiff defaulted on the property's mortgage. (Declaration of Richard Schwiner ("Schwiner Decl.") ¶¶ 5, 7-10 (Docket No. 23-1).) The parties entered into a hardship forbearance agreement shortly thereafter so that McBride could defer paying the mortgage. (<u>Id.</u> ¶¶ 11-13.)

At most three years later, PHH notified plaintiff that he would need to start making payments towards the mortgage again. (<u>Id.</u> at ¶¶ 14-18.) At first, McBride did not apply for a loan modification, but he attempted to communicate with defendant's first authorized representative for his account to little effect. (<u>Id.</u>)

Sometime between that notice and the beginning of this litigation, plaintiff applied for a loan modification on several occasions. (<u>Id.</u> ¶¶ 18-30.) On each occasion, PHH denied his application. (<u>Id.</u>) Defendant cited illegible pay stubs as the reason for at least some of the denials. (<u>Id.</u> ¶¶ 21-22, 26-27, 29.)

On April 19, 2023, defendant recorded a Notice of Default regarding McBride's mortgage, which continued the process of foreclosure on the property. (<u>Id.</u> ¶ 24.) On August 21, 2023, PHH recorded a Notice of Trustee's Sale with respect to the property. (<u>Id.</u> ¶ 28.)

1    Plaintiff initiated the instant action on October 2,
2  2023.  PHH timely answered the Complaint on October 18, 2023.
3  (Docket No. 9.)  After filing the Complaint, McBride completed a
4  loan modification application on October 13, 2023.  (Schwiner
5  Decl. ¶¶ 31-32.)  PHH accepted that application and sent
6  plaintiff an offer for a payment plan in early December 2023.
7  (Declaration of Neil Cooper ("Cooper Decl.") ¶ 2 (Docket No. 23-
8  2).)  The offer has since expired due to a lack of response.
9  (Id.)

10    McBride moved ex parte for a temporary restraining
11  order on February 7, 2024.  (Docket No. 14.)  Over defendant's
12  timely opposition (Docket No. 15), the court temporarily enjoined
13  a future foreclosure sale of the property on February 12, 2024
14  (Docket No. 21).[1]

15  II. Standard

16    Summary judgment is proper "if the movant shows that
17  there is no genuine dispute as to any material fact and the
18  movant is entitled to judgment as a matter of law."  Fed. R. Civ.
19  P. 56(a).  A material fact is one "that might affect the outcome
20  of the suit under the governing law," and a genuine issue is one
21  that could permit a reasonable trier of fact to enter a verdict
22  in the non-moving party's favor.  Anderson v. Liberty Lobby,
23  Inc., 477 U.S. 242, 248 (1986).

24    The moving party bears the initial burden of

25  _____

26    [1] The temporary restraining order lacks preclusive effect
   since it is not a final judgment on the merits.  See, e.g.,
27  Friends of Gualala River v. Gualala Redwood Timber, LLC, 552
   F. Supp. 3d 924, 936 (N.D. Cal. 2021); Benasra v. Mitchell
28  Silberberg & Knupp, 96 Cal. App. 4th 96, 115 (2d Dist. 2002).

1  establishing the absence of a genuine issue of material fact.

2  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  However,

3  "the underlying facts . . . must be viewed in the light most

4  favorable to the non-moving party."  Matsushita Elec. Indus. Co.

5  v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (alteration in

6  original) (quoting United States v. Diebold, Inc., 369 U.S. 654,

7  655 (1962)).

8  III.  Discussion

9       A.   Homeowner Bill of Rights

10          Plaintiff sues under two different provisions of the

11  Homeowner Bill of Rights.  One claim is based on its prohibition

12  on "dual tracking," where a lender such as PHH proceeds with

13  foreclosure while reviewing a complete loan modification

14  application.  Cal. Civ. Code § 2923.6(c) ("If a borrower submits

15  a complete application for a first lien loan modification offered

16  by, or through, the borrower's mortgage servicer, a mortgage

17  servicer . . . shall not record a notice of default, or conduct a

18  trustee's sale, while the complete first lien loan modification

19  application is pending.").  The statute further provides that if

20  the lender offers the borrower such as McBride a loan

21  modification, the borrower has fourteen days to accept that

22  offer.  Id.(2).

23          McBride's other Homeowner Bill of Rights claim arises

24  under its requirement that the lender provide "a single point of

25  contact."  Id. § 2923.7(a).  If a borrower requests a single

26  point of contact, the mortgage servicer must provide a person or

27  team of personnel who can "timely, accurately, and adequately

28  inform the borrower of the current status of the foreclosure

1  prevention alternative." Id.

2      The Homeowner Bill of Rights states that "[a] mortgage

3  servicer . . . shall not be liable for any violation that it has

4  corrected and remedied prior to the recordation of the trustee's

5  deed upon sale." Cal. Civ. Code § 2924.12(c). In other words,

6  it "provid[es] a safe harbor" for violations such that "a

7  temporary disruption of the normal foreclosure process that is

8  corrected and causes no lasting harm to the borrower's rights

9  will give rise to no liability." Billesbach v. Specialized Loan

10  Servicing LLC, 63 Cal. App. 5th 830, 845-46 (2d. Dist. 2021).

11      Plaintiff's Homeowner Bill of Rights claims fail

12  because PHH cured any of its violations by offering him a new

13  payment plan in late 2023. See Cal. Civ. Code § 2924.12(a)-(c).

14  Regarding the dual-tracking claim, it is uncontested that on

15  October 13, 2023, McBride completed a loan modification

16  application. (Schwiner Decl. ¶ 31.) In December 2023, defendant

17  extended him an offer for the payment plan, but neither plaintiff

18  nor his spouse accepted PHH's offer. (Cooper Decl. ¶ 2.) The

19  offer has since expired. Id. In contrast, plaintiff failed to

20  complete a loan modification offer when defendant recorded a

21  Notice of Default on April 19, 2023, or when PHH recorded a

22  Notice of Trustee's Sale on August 21, 2023. (Schwiner Decl.

23  ¶¶ 24, 28.)

24      McBride offers three arguments in response. First, the

25  payment plan asked plaintiff to pay more than he could afford, so

26  it was not based on plaintiff's completed application. Second,

27  the payment plan was not a loan modification because it was

28  labeled as a modification settlement offer. Third, the payment

1  plan was invalid because it did not have an interest rate or

2  escrow portion.  (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 10

3  (Docket No. 25).)

4          McBride's assertions do not create any issue of

5  material fact regarding the payment plan which PHH offered him.

6  What matters is that PHH returned to the negotiating table with a

7  non-frivolous offer based on a fixed dollar amount spread over a

8  definite number of payments.  To plaintiff's first point, he

9  neglects to cite any authority requiring that PHH offer him a

10 suitable loan modification after plaintiff failed to pay his

11 mortgage for at least two years.  Even if the payment plan

12 exceeded plaintiff's monthly income and came after plaintiff

13 commenced litigation, it still had the requisite nexus with his

14 completed application from October 13, 2023. (See Dep. of Robert

15 McBride at 80, ll. 8-16.)

16         As for plaintiff's second and third arguments, the

17 court is not aware of any provision in the Homeowner's Bill of

18 Rights which requires PHH to offer McBride a loan modification

19 plan which is affordable to him.  The fact that defendant labeled

20 the payment plan "a 'modification settlement offer'" does not

21 change the fact that it cures plaintiff's alleged Homeowner Bill

22 of Rights violations.  (Galletta Decl. ¶ 3.)  The same applies to

23 McBride's assertions that the payment plan lacked certain

24 financial details, such as an interest rate on the remaining

25 amount.  See Billesbach, 63 Cal. App. 5th at 845-46 (quoting Cal.

26 Civ. Code § 2924.12(c)).  Accordingly, PHH's offer satisfies the

27 requirements of the Homeowner Bill of Rights.

28         In addition, plaintiff concedes that defendant assigned

1  him a single point of contact, Gabriel Lara, who discussed the

2  applications and paperwork with him over phone and email between

3  December 15, 2022, and October 2, 2023.  (Statement of Undisputed

4  Facts ¶ 4.)  Lara functioned as the single point of contact

5  required by sections 2923.7 and 2924.12 of the California Civil

6  Code.

7       In sum, PHH cured plaintiff's alleged Homeowner Bill of

8  Rights violations by offering him the payment plan and assigning

9  Lara to his account.  Put differently, defendant's offer of a

10  loan modification payment plan renders McBride's alleged

11  violations of the Homeowner Bill of Rights immaterial.  <u>See</u> Cal.

12  Civ. Code § 2924.12(a)-(b).  As a result, plaintiff fails to

13  create a genuine issue of material fact regarding either of his

14  first two claims and cannot prevail on them.

15      B.   <u>UCL</u>

16       The UCL prohibits any unlawful, unfair, or fraudulent

17  business act or practice.  Cal. Bus. & Prof. Code § 17200.  As

18  such, a claim arising under it may allege that a business act or

19  practice is unlawful, unfair, and/or fraudulent.  <u>Berryman v.</u>

20  <u>Merit Prop. Mgmt., Inc.</u>, 152 Cal. App. 4th 1544, 1553-54 (4th

21  Dist. 2007).  To show that a business act or practice is

22  unlawful, McBride must show "a violation of another law [a]s a

23  predicate" for the claim.  <u>Id.</u> at 1554.

24       Plaintiff's third claim, brought under the UCL's

25  "unlawful" prong, depends on his alleged Homeowner Bill of Rights

26  violations as predicates.  (Opp'n at 11.)  Because the court

27  concludes that McBride cannot succeed on either of his Homeowner

28  Bill of Rights claims, plaintiff cannot prevail on his UCL claim

for failure to properly allege a predicate law violation.

IT IS THEREFORE ORDERED that PHH's motion for summary judgment be, and the same hereby is, GRANTED.  The Clerk is directed to enter final judgment for defendant and close the case.

Dated:   September 19, 2024

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

8